**BROWN RUDNICK LLP**
Seven Times Square
New York, New York 10036
(212) 209-4800
David J. Molton
William R. Baldiga
Daniel J. Saval
May Orenstein
Kerry Quinn

*Attorneys for the Petitioners*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 15 Case |
| Fairfield Sentry Limited, et al., | Case No. 10-13164 (BRL) |
| Debtors in Foreign Proceedings. | Jointly Administered |
| Fairfield Sentry Limited, et al. (In Official Liquidation), acting by and through Kenneth Krys and Christopher Stride, Official Liquidators, | Adv. Pro. No. |
| Plaintiffs, | Complaint |
| -against- | |
| Theodoor GGC Amsterdam and Beneficial Owners of the Accounts Held in the Name of Theodoor GGC Amsterdam 1-1000, | |
| Defendants. | |

Plaintiffs Fairfield Sentry Limited ("Sentry") and Fairfield Sigma Limited

("Sigma", and collectively, the "Funds"), through their attorneys Brown Rudnick LLP,

for the complaint against Defendants, allege the following based on personal knowledge

or information derived from their books and records or from other sources, including,

*inter alia*, court filings and statements of governmental agencies and other parties.

## PRELIMINARY STATEMENT

1.      This action and similar actions brought by the Funds have been authorized

by their court-appointed liquidators to recover payments made by the Funds for the

redemption of Sentry and Sigma shares prior to December 2008.  Sentry and Sigma,

along with their affiliate fund, Fairfield Lambda Limited ("Lambda"), were created as a

means for private investment in managed accounts established with Bernard L. Madoff

Investment Securities LLC ("BLMIS"), a broker dealer purportedly providing investment

advisory services.  Following revelations in December 2008 that Bernard L. Madoff

("Madoff"), the proprietor of BLMIS, had been operating a Ponzi scheme, the Funds

were involuntarily put into liquidation in proceedings commenced in the Commercial

Division of the High Court of Justice, British Virgin Islands.

2.      From the Funds' inception until the disclosure of Madoff's fraud,

substantially all investor funds, net of fees and expenses, raised by Sentry and Sigma

through the sale of shares were transferred to BLMIS for investment in accounts

managed by Madoff.  Prior to December 2008, the voting, participating shares of Sentry,

$.01 par value per share, and Sigma, €01 par value per share, (the "Shares") were

redeemable in accordance with their terms for a price equal to their "Net Asset Value."

Net Asset Value was to be determined, in accordance with applicable accounting

standards, as the value of the respective assets of Sentry and Sigma divided by the

number of shares outstanding in each fund, net of certain expenses ("Net Asset Value").

From time to time, in order to make payments believed by the Funds to be due upon redemption of Shares ("Redemption Payments"), the Funds made withdrawals from their BLMIS accounts.

3.    At all relevant times, the Funds believed payments received by them from BLMIS were the proceeds from the sale of securities held by BLMIS for the accounts of the Funds.  The Funds furthermore believed that the amount, per share, paid by them for each Share redeemed was equal to the per share Net Asset Value.

4.    At all relevant times, the Funds were mistaken both as to the source of the funds received by them from BLMIS and the value and existence of assets held for the Funds' accounts by BLMIS.  Upon information and belief, none of the securities shown on statements provided to the Funds by BLMIS as being held for their accounts existed in fact.  Furthermore, upon information and belief, amounts withdrawn by the Funds from their accounts with BLMIS, believed by the Funds to be the proceeds from the sale of securities held by BLMIS for the Funds, were, in fact, derived from amounts obtained by BLMIS from deposits made by the Funds, or from other investors and customers of BLMIS.  As a result of these mistakes, at all relevant times, the Net Asset Value of each Share redeemed was miscalculated, and Redemption Payments were mistakenly made for amounts far in excess of the actual Net Asset Value of Shares redeemed.

5.    During the period from and after August 13, 2004, through April 21, 2006, the Funds made Redemption Payments aggregating USD $1,019,107.38 to Theodoor GGC Amsterdam ("TGGC").  At the time such payments were made, the Funds mistakenly believed that such payments were in the amount of the Net Asset Value of the Shares tendered at the time of redemption.  In fact, however, the Redemption Payments

3

made to TGGC far exceeded the actual Net Asset Value of the Shares redeemed. Moreover, to the extent that the funds used to pay such Redemption Payments were made with amounts that had been withdrawn by the Funds from their BLMIS accounts, such amounts were not, as the Funds believed them to be, proceeds of the liquidation of securities held for their accounts. On information and belief, any amounts obtained by the Funds from BLMIS to make Redemption Payments to TGGC were obtained from Sentry and Sigma investors other than TGGC or other investors who had made deposits, directly or indirectly, with BLMIS.

6.      Upon information and belief, TGGC has either retained the Redemption Payments made to it by the Funds for its own account and benefit or, alternatively, paid all or some portion of such payments to or for the account of persons or entities for whom TGGC may have subscribed for shares of the Funds in the capacity of trustee, agent, representative, nominee or custodian.

7.      In December 2008, it became known to the Funds that BLMIS had been operated for many years by Madoff as a massive Ponzi scheme and that account statements rendered by BLMIS prior to December 2008, showing that the Funds had securities having a market value in excess of $6 billion on account with BLMIS, were entirely fictitious. Following the revelation of the fraud, the Funds' board of directors suspended any further redemptions of the Funds' shares and the calculation of the Net Asset Value. As of December 2008 and presently, Sentry and Sigma have, respectively, approximately 4.7 million and 3.8 million shares outstanding.

8.      The Funds' actual assets are estimated to be far less than the amount needed by the Funds to satisfy claims that have been or may be asserted against them.

Irving H. Picard, the Trustee appointed by the United States District Court for the Southern District of New York for the liquidation of BLMIS (the "BLMIS Trustee"), has asserted claims against Sentry in an adversary proceeding pending before the United States Bankruptcy Court of the Southern District of New York, <u>Picard v. Fairfield Sentry Limited, et al.</u>, No. 08-01789 (BRL) (the "BLMIS Adversary Proceeding"). Pursuant to the complaint filed in the BLMIS Adversary Proceedings, the BLMIS Trustee seeks recovery from Sentry of approximately $3.2 billion transferred to it from BLMIS, which funds, the BLMIS Trustee alleges, were the misappropriated assets of other direct and indirect investors of BLMIS. A substantial amount of such transferred funds were applied by Sentry to the making of Redemption Payments.

9.    Unless Redemption Payments mistakenly paid to shareholders are recovered by the Funds, they will be unable to satisfy their liabilities and claims that have been made or are expected to be made against them. Moreover, to the extent such liabilities and claims must be satisfied solely from the Funds' current assets, the Defendants will have been unjustly enriched since they will not bear their proportionate share of such liabilities and claims, but rather Defendants would retain a windfall at the expense of other shareholders, claimants and creditors of the Funds.

## JURISDICTION AND VENUE

10.    Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1334(b), as this adversary proceeding relates to the Chapter 15 proceedings of the above-captioned Debtors, <u>In re Fairfield Sentry Limited, *et al.*</u>, No. 10-13164 (BRL), pending in the Bankruptcy Court for the Southern District of New York. Pursuant to the standing order of reference of the United States District Court for the Southern District of New York,

dated July 10, 1984, all proceedings related to cases under Title 11 of the United States Code (as amended, the "Bankruptcy Code") are referred to this Court for adjudication.

11.      This is a core proceeding under 28 U.S.C. §§ 157(b)(2) (O) and (P). Should the Court determine this to be a non-core proceeding, Plaintiffs consent to entry of final judgment and order by this Court.

12.      Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

13.      Moreover, this Court has jurisdiction over TGGC and any Beneficial Shareholders by virtue of the legally binding and valid agreements and representations set forth in one or more Subscription Agreements TGGC entered into with the Funds (collectively, the "Subscription Agreement").

14.      The Subscription Agreement provides for, *inter alia*, the irrevocable submission by TGGC to the jurisdiction of the New York courts with respect to any proceeding in respect of the Funds and TGGC's consent to service of process by the mailing of such process to TGGC.   Furthermore, by executing the Subscription Agreement, TGGC agreed to all terms and conditions contained therein, including the express provision that any agreement made by TGGC in the Subscription Agreement would also apply to any other person for whom TGGC was subscribing as trustee, agent, representative, or nominee – i.e., all Beneficial Shareholders.  Moreover, by executing the Subscription Agreement, TGGC represented that it had all requisite authority from Beneficial Shareholders to execute and perform any and all obligations on their behalf, and also agreed to indemnify the Funds for any damages resulting from an assertion by a Beneficial Shareholder that TGGC lacked proper authorization to enter into the Subscription Agreement or perform the obligations thereof.

## PARTIES

15.     Sentry, a British Virgin Islands company, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently re-registered as a business company under the BVI Business Companies Act 2004. Sentry's registered agent is Codan Trust company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI.   Sentry is currently in liquidation in proceedings commenced on April 21, 2009 in the Commercial Division of the High Court of Justice, British Virgin Islands (the "BVI Court").

16.     Sigma, a British Virgin Islands company, was organized in 1990 under the International Business Company Act of the British Virgin Islands and was subsequently re-registered as a business company under the BVI Business Companies Act 2004. Sigma's registered agent is Codan Trust company (B.V.I.) located at Romasco Place, Wickhams Cay 1, Road Town, Tortola, BVI.   Sigma is currently in liquidation in proceedings commenced on April 21, 2009, in the BVI Court.   This action and other similar actions brought by Sentry, Sigma and Lambda have been authorized by these funds' BVI Court-appointed liquidators with the permission of the BVI Court.

17.     Theodoor GGC Amsterdam ("TGGC") was, at all relevant times, a registered holder of Shares.   Upon information and belief, TGGC is a corporate entity organized under the laws of The Netherlands and having its head office at Keizersgracht 617, 1017 DS, Amsterdam, The Netherlands.   TGGC subscribed for the purchase of Shares by entering into the Subscription Agreement with the Funds.   All purchases of Shares by TGGC were subject to the terms of the Subscription Agreement.

18.     Defendants "Beneficial Owners of the Accounts Held in the Name of Theodoor GGC Amsterdam 1-1000" are any persons or entities having a beneficial ownership or interests in Shares of the Funds issued to TGGC and on whose behalf TGGC was acting as trustee, agent, representative, or nominee (individually, a "Beneficial Shareholder" and collectively, "Beneficial Shareholders").

## NOTICE PURSUANT TO FED. R. CIV. P. 44.1

19.     Issues to be resolved in this case may be determined to be governed by the laws of the British Virgin Islands.  In that event, Plaintiffs intend to rely upon the applicable laws of that territory.

## FACTUAL ALLEGATIONS

20.     Sentry was the largest of all so-called "feeder funds" to maintain accounts with BLMIS.  Sigma and Lambda were indirect BLMIS feeder funds established for foreign currency (respectively, Euro and Swiss franc) investment through purchase of shares of Sentry.  Sentry's account statements with BLMIS as of the end of October 2008 showed in excess of $6 billion of assets supposedly held by BLMIS.  As stated in its offering materials, Sentry's investment objective was to achieve capital appreciation of its assets primarily through investments in BLMIS.  Sentry raised funds for investment in BLMIS by selling its Shares, which were listed on the Irish Stock Exchange in Dublin, to qualified investors.

21.     Substantially all of the funds (some 95%) raised by Sentry from sales of its Shares, net of fees and expenses, were turned over to BLMIS, and supposedly credited to accounts held in the name of Sentry with BLMIS, purportedly for use in a split-strike conversion investment strategy.  In accordance with the Funds' Articles of Association

and other relevant documents governing the Funds and their Shares, from time to time, the Funds paid to shareholders, for each Share tendered for redemption, an amount that was based on the Funds' Net Asset Value, as it was then calculated.

22.     In calculating Net Asset Value, the Funds used and relied upon account statements rendered from time to time by BLMIS purportedly showing securities or interests or rights in securities held by BLMIS for the account of Sentry. Generally, all securities identified on BLMIS account statements were traded on public exchanges and had readily ascertainable market values.

23.     Upon information and belief, the purchases and sales of securities and other transactions shown on the account statements provided by BLMIS as having been made for the account of Sentry never in fact occurred and no investments were ever made by BLMIS for the account of Sentry. Upon information and belief, all assets shown on BLMIS account statements rendered to the Funds were entirely fictitious. Further, upon information and belief, amounts deposited by the Funds with BLMIS for the purchase of securities to be held by BLMIS for the account of Sentry were used by Madoff to pay requests for payments or redemptions from other BLMIS account holders or were misappropriated by Madoff for other unauthorized uses.

24.     From time to time, to make Redemption Payments, the Funds requested payments from BLMIS. The Funds believed that the amounts provided to it in response to such requests represented proceeds from the sale or liquidation of securities or positions held for the account of Sentry. Upon information and belief, however, payments made by BLMIS purportedly representing the proceeds of securities

transactions were in fact deposits made with BLMIS by the Funds and/or other investors with BLMIS.

25.     During the period from and after August 13, 2004, through April 21, 2006, TGGC received Redemption Payments totaling USD $1,019,107.38 from the Funds in respect of Shares tendered for redemption.  The dates and amounts of each Redemption Payment received by TGGC from Sentry are set forth on Exhibit A.  The dates and amounts of each Redemption Payment received by TGGC from Sigma are set forth on Exhibit B.

26.     On December 11, 2008, the FBI arrested Madoff for violation of federal securities laws.  On that same day, the United States Attorney brought criminal charges against Madoff, alleging that Madoff ran a multi-billion dollar Ponzi scheme.  United States v. Madoff, No. O8-mj-2735 (S.D.N.Y. filed Dec. 11, 2008).  Upon arrest, Madoff was reported to have told the agents that "there is no innocent explanation" for the fraudulent scheme he had orchestrated and confessed that he "paid investors with money that wasn't there."  Although Madoff had purported to invest funds obtained from investors and feeder funds in securities, in reality, funds obtained from investors were not used to purchase securities.  Instead, new funds obtained from investors, including amounts obtained from Sentry and Sigma, were misappropriated by Madoff and used to fund withdrawals from accounts held by other investors with BLMIS, including Sentry.  In March 2009, Madoff pleaded guilty to the criminal charges brought against him, and he is now serving a 150-year sentence in federal prison.

27.    On December 11, 2008, the United States Securities and Exchange Commission ("SEC") filed an emergency action in the Southern District of New York to halt ongoing fraudulent offerings of securities and investment advisory fraud by Madoff and BLMIS.    SEC v. Madoff, No. 08-cv-10791 (S.D.N.Y. filed Dec. 11, 2008). On February 9, 2009, the SEC submitted to the Court a proposed partial judgment, to which Madoff consented, imposing a permanent injunction and continuing relief against him, including a permanent freezing of his assets.

28.    Following the revelation of the fraud,  the Funds' boards of directors suspended any further redemptions of Sentry or Sigma shares and the calculation of the Net Asset Value. As of December 2008 and presently, Sentry and Sigma had, respectively, approximately 4.7 million and 3.8 million shares outstanding.

29.    On December 15, 2008, a trustee was appointed for the liquidation of the BLMIS estate.  Proceedings for such liquidation are pending in the Bankruptcy Court for the Southern District of New York under the caption Securities Investor Protection Corporation v. Bernard L. Madoff Investment Securities LLC, SIPA Liquidation No. 08-1789 (BRL).

30.    On May 18, 2009, the BLMIS Trustee commenced the BLMIS Adversary Proceeding against Sentry and other defendants.  In the BLMIS Adversary Proceeding, the BLMIS Trustee seeks to recover approximately $3.5 billion from Sentry and others on account of transfers that BLMIS allegedly made to Sentry and other persons during the six year period preceding the filing of the BLMIS liquidation proceedings.  These transfers are alleged by the BLMIS Trustee to have been preferential transfers under Section 547 of the Bankruptcy Code and/or fraudulent transfers under Sections 544 and

548 of the Bankruptcy Code and applicable state law.  The BLMIS Adversary Proceeding is currently pending and the claims asserted therein are unresolved.

31.    On April 21, 2009, shareholders of Sentry and Sigma applied to the BVI Court for the appointment of a liquidator over each of Sentry and Sigma.  On July 21, 2009, Messrs. Kenneth Krys and Christopher Stride were appointed by the BVI Court as the joint liquidators of Sentry and Sigma (the "Liquidators") in their separate liquidation proceedings, under Matter Nos. BVIHCV2009/136 and BVIHCV2009/139, respectively, which are currently pending before the BVI Court under Part VI, titled "Liquidation," of the Insolvency Act, 2003 of the BVI.

32.    Upon appointment, the Liquidators obtained, among other things, custody and control of the Funds' assets, the power to do all acts and execute, in the name and on behalf of the Funds, any deeds, receipts or other documents, and the power to compromise claims, commence litigation and to dispose of property on behalf of the Funds.

33.    Acting in accordance with authority afforded to them as Liquidators, and with the consent of the BVI Court, the Liquidators authorized this and similar actions against redeeming shareholders to be commenced for and in the name of the Funds.

### FIRST CLAIM
*(Unjust Enrichment- Against TGGC)*

34.    The Funds repeat and allege again the allegations contained in paragraphs 1 through 30 above as if set forth herein.

35.    As alleged above, to the extent amounts were withdrawn from BLMIS to make Redemption Payments to TGGC, such withdrawn funds consisted of funds

deposited with BLMIS by the Funds and other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

36.     By reason of its receipt of funds deposited by other investors with BLMIS, TGGC has been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

37.     It would offend principles of equity and good conscience to permit TGGC to retain the Redemption Payments it received from the Funds.

38.     Sentry is entitled to recover from TGGC a sum equal to the Redemption Payments received by it from the Funds.

## SECOND CLAIM
### (Unjust Enrichment- Against Beneficial Shareholders)

39.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 35 above as if set forth herein.

40.     Upon information and belief, TGGC may have subscribed to all or some portion of the Shares issued to it under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for Beneficial Shareholders.

41.     Upon information and belief, TGGC may have paid to or credited some or all of the Redemptions Payments received by it to accounts of Beneficial Shareholders. As alleged above, any payments received by Beneficial Shareholders upon the redemption of Shares issued to TGGC consisted of funds invested with BLMIS by the Funds and other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

42.     To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to TGGC in its capacity as trustee, agent, representative, or nominee for a Beneficial Shareholder, such Beneficial Shareholder has been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

43.     It would offend principles of equity and good conscience to permit any Beneficial Shareholders to retain the Redemption Payments made by the Funds.

44.     The Funds are entitled to recover from any Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of the Funds held by them through TGGC.

## THIRD CLAIM
### *(Money Had and Received-Against TGGC)*

45.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 41 above as if set forth herein.

46.     As alleged above, the Redemption Payments received by TGGC upon the tender of Shares consisted of amounts deposited with BLMIS by the Funds and other investors to BLMIS and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

47.     By reason of its receipt of funds representing the deposits with BLMIS of the Funds and other investors, TGGC has been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

48.     Furthermore, TGGC was not entitled to receive the Redemption Payments because the amounts of the Redemption Payments were based on a miscalculated and

inflated Net Asset Value, which caused the payment received by TGGC for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

49.     To the extent that Redemption Payments are not recovered by the Funds, the loss will be disproportionately and unjustly borne by the Funds, their creditors and the current holders of shares in the Funds.

50.     It would offend principles of equity and good conscience to permit TGGC to retain the Redemption Payments it received from the Funds.

51.     By reason of the foregoing, the Funds are entitled to recover from TGGC a sum in an amount equal to the Redemption Payments.

### FOURTH CLAIM
*(Money Had and Received-Against Beneficial Shareholders)*

52.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 48 above as if set forth herein.

53.     Upon information and belief, TGGC may have subscribed to all or some portion of the Shares issued to it under the Subscription Agreement in the capacity of trustee, agent, representative, or nominee for Beneficial Shareholders.

54.     Upon information and belief, TGGC may have paid to or credited some or all of the Redemptions Payments received by it to accounts of Beneficial Shareholders. As alleged above, any payments received by Beneficial Shareholder upon the redemption of Shares issued to TGGC consisted of amounts deposited with BLMIS by the Funds or by other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

55.    To the extent that a Beneficial Shareholder received any portion of the Redemption Payments paid to TGGC in its capacity as trustee, agent, representative, or nominee for Beneficial Shareholders, such Beneficial Shareholders have been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

56.    Furthermore, Beneficial Shareholders were not entitled to receive any portion of the Redemption Payments paid to TGGC upon the redemption of Shares issued to it in its capacity as trustee, agent, representative, or nominee for Beneficial Shareholders because the amounts transferred by the Funds with respect to Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received for redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

57.    To the extent the Redemption Payments are not recovered by the Funds, the loss will be disproportionately and unjustly borne solely by the Funds, their creditors and the current holders of Shares in the Funds.

58.    It would offend principles of equity and good conscience to permit Beneficial Shareholders to retain the Redemption Payments made by the Funds.

59.    By reason of the foregoing, the Funds are entitled to recover from Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of the Funds held for them through TGGC.

## FIFTH CLAIM
### *(Mistaken Payment-Against TGGC)*

16

60.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 56 above as if set forth herein.

61.     As described above, the Funds made each of the Redemption Payments to TGGC under the mistaken belief that the amounts paid to TGGC represented the proceeds of the sale of securities held for Sentry in accounts established with BLMIS.

62.     Upon information and belief, however, BLMIS did not hold any securities or interests of securities on account for Sentry and the payments made by BLMIS to Sentry to fund Redemption Payments to TGGC represented, in fact, funds deposited with BLMIS by the Funds and other investors.

63.     The Redemption Payments, while benefiting TGGC, were made to the detriment of the Funds, their creditors and the current holders of their Shares.

64.     Additionally, TGGC was not entitled to receive the Redemption Payments because, as was unknown to the Funds, the amounts transferred by the Funds with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by TGGC for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares.   In these circumstances, the Redemption Payments should be returned for the benefit of the Funds, their creditors and the current holders of Shares in the Funds.

65.     To the extent the Redemption Payments are not recovered by the Funds, the loss will be disproportionately and unjustly borne solely by the Funds, their creditors and the current holders of Shares in the Funds.

66.     It would thus offend principles of equity and good conscience to permit TGGC to retain the Redemption Payments.

67.    By reason of the foregoing, the Funds are entitled to recover from TGGC a sum in an amount equal to the Redemption Payments.

## SIXTH CLAIM
### *(Mistaken Payment-Against Beneficial Holders)*

68.    The Funds repeat and allege again the allegations contained in paragraphs 1 through 64 above as if set forth herein.

69.    As described above, the Funds made each of the Redemption Payments to TGGC under the mistaken belief that the amounts paid to TGGC represented the proceeds of the sale of securities held for Sentry in accounts established with BLMIS.

70.    However, upon information and belief, BLMIS did not hold any securities or interests of securities on account for Sentry and the payments made by BLMIS to Sentry to fund Redemption Payments to TGGC represented, in fact, amounts deposited with  BLMIS by the Funds and other investors.

71.    Upon information and belief, TGGC may have paid to or credited some or all of the redemptions payments received by it to accounts of Beneficial Shareholders. As alleged above, any payments received by Beneficial Shareholders upon the redemption of shares issued to TGGC consisted of amounts deposited with BLMIS by the Funds and other investors and were not the proceeds of the sale of assets held by BLMIS for the account of Sentry.

72.    Additionally, Beneficial Shareholders were not entitled to receive any portion of the Redemption Payments received by TGGC upon the redemption of Shares issued to it in its capacity as trustee, agent, representative, or nominee for Beneficial Shareholders because, as was unknown to the Funds, the amounts transferred by the

Funds with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the Redemption Payments received by TGGC for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

73.     The Redemption Payments, while benefiting any Beneficial Shareholder receiving any portion thereof, were made to the detriment of the Funds, their creditors and the current holders of their Shares.

74.     It would thus offend principles of equity and good conscience to permit any Beneficial Shareholder to retain the Redemption Payments.

75.     By reason of the foregoing, the Funds are entitled to recover from any Beneficial Shareholders a sum equal to the portion of any Redemption Payments received by them in respect of their interests in Shares of the Funds held for them through TGGC.

## SEVENTH CLAIM
### *(Constructive Trust-Against all Defendants)*

76.     The Funds repeat and allege again the allegations contained in paragraphs 1 through 72 above as if set forth herein.

77.     As described above, upon receipt of a redemption request, the Funds made each redemption payment to TGGC based on a miscalculated and inflated Net Asset Value, which caused Redemption Payments to be in excess of the actual Net Asset Value of redeemed Shares.

78.     As alleged above, the Redemption Payments represented deposits with BLMIS made by the Funds and other investors and were not, as the Funds mistakenly believed, proceeds from the sale of securities held by BLMIS for the account of Sentry.

79.    Upon information and belief, TGGC may have paid some or all of the Redemptions Payments it received to Beneficial Shareholders.

80.     By reason of their receipt of some or all of the Redemption Payments, Defendants have been unjustly enriched to the detriment of the Funds, their creditors and the current holders of Shares in the Funds.

81.    Furthermore, Defendants were not entitled to receive the Redemption Payments because the amounts transferred by the Funds with respect to these Redemption Payments were based on a miscalculated and inflated Net Asset Value, which caused the payment received by TGGC for its redemption of Shares to be in excess of the actual Net Asset Value of such Shares.

82.    It would offend principles of equity and good conscience to permit Defendants to retain the Redemption Payments.

83.    By reason of the foregoing, a constructive trust should be imposed on the Redemption Payments that were received by Defendants for the benefit of the Funds, their creditors and the current holders of Shares in the Funds.

## PRAYER FOR RELIEF

WHEREFORE, Sentry and Sigma request the following relief:

84.    On the First, Third and Fifth Claims, judgment for compensatory damages in favor of the Funds against TGGC in an amount representing the Redemption Payments made to TGGC, plus interest;

85.    On the Second, Fourth and Sixth Claims, judgment for compensatory damages in favor of the Funds against Beneficial Shareholders in an amount representing the amounts of Redemption Payments received by Beneficial Shareholders, plus interest;

86.     On the Seventh Claim, imposing a constructive trust on Redemption Payments; and

87.     Awarding the Funds the costs and disbursements of the action, including reasonable attorneys' fees and accountants' and experts' fees, costs and expenses;

88.     Granting the Funds such other and further relief as the Court deems just and proper.

Dated: New York, New York
        August 12, 2010

BROWN RUDNICK LLP

By: /s/ David J. Molton_____
        David J. Molton
        William R. Baldiga
        Daniel J. Saval
        May Orenstein
        Kerry Quinn

Seven Times Square
New York, New York 10036
Telephone: 212.209.4822
Facsimile: 212.209.4801

*Attorneys for the Petitioners*